GRAFTON STAVE & HEADING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12879.   Promulgated Aug. 8, 1927.

Evidence not sufficient to establish claim for deduction from gross income on account of dismantling of buildings and equipment.

*John L. Bledsoe, Esq.,* for the petitioner.
*W. H. Lawder, Esq.,* for the respondent.

The respondent has determined a deficiency in income and profits taxes for the year 1920 in the amount of $7,040.22, as the result of (1) reducing the petitioner's opening inventory for 1920 by the sum of $9,355.21, and (2) disallowing a claimed reduction in the amount of $8,435.14 taken by the petitioner as obsolescence on buildings and equipment dismantled in 1920. The respondent concedes that his

reduction of the petitioner's opening inventory for 1920 by the sum of $9,355.21 was improper, leaving as the sole issue in dispute, the claim for so-called obsolescence above mentioned.

### FINDINGS OF FACT.

The petitioner is an Illinois corporation which was organized in 1903 and surrendered its charter in 1925.

Prior to 1912 the stave mill and the heading mill of the petitioner were separate plants at different locations. In the fall of 1911, petitioner's stave mill was constructed at Pocahontas, Ark. In January, 1912, a fire occurred at its heading plant, which was located at Bigger, Ark. It was then decided to consolidate the two mills in one location at Pocahontas, Ark. The heading mill was constructed at Pocahontas in 1912. The stave and heading departments of the petitioner thereby became physically joined in one plant location. The new heading machinery purchased in 1912 was entered on the petitioner's books at its cost price plus freight and installation. On December 31, 1915, the book accounts of the stave mill and the heading mill were consolidated. At that time the petitioner's books showed stave mill construction at $8,543.66; heading mill construction at $17,224.31; and dry kiln, tracks and other items all belonging to the heading department, at $79,115.

After December 31, 1915, the petitioner's books show certain additions and improvements to and in the equipment of the plant at costs as set forth below:

1916

| | |
|---|---|
| Lighting plant | $281.96 |
| Saw joinder | 244.36 |
| Railroad switch | 268.08 |
| Tools for plant | 199.18 |

1917

| | |
|---|---|
| Storage | 53.91 |
| Hardware | 10.62 |
| Track rails | 132.30 |
| Unknown item | 179.56 |
| Machinery addition | 100.00 |
| Blow pipe fittings | 24.73 |
| Exhaust wheel | 72.00 |
| Nails | 12.00 |
| Water tank | 4.92 |
| Fire wall construction | 1,917.43 |

1918

| | |
|---|---|
| Kiln track | 45.87 |
| Nails used in construction | 3.90 |
| | |
| Total | 3,550.82 |

Among the assets used exclusively in the heading mill were a concrete dry kiln that cost between $5,000 and $6,000, a shed that cost around $2,500, a trestle track (not including rails) that cost not less than $450, and a Corliss engine that cost $1,500. The Corliss engine was purchased by the petitioner in 1911, and the concrete dry kiln, shed and trestle track, were constructed by the petitioner in 1912.

During the five-year period ending December 31, 1919, the petitioner wrote off as depreciation 40 per cent of the book value of buildings and equipment in the heading department. At the close of 1920, petitioner's mill, construction and machinery account on the books stood at a total of $24,280.84.

Timber of the size and quality used in the manufacture of headings, and available to the petitioner, was exhausted some time in the year 1919. The heading mill was closed down in November, 1919, and was dismantled throughout the year 1920. In dismantling, the petitioner took out all of the heading machinery and stored it in another building, and tore down the mill cover that had shedded this machinery. The machinery so dismantled consisted of up-to-date machines which were sold in 1920 and subsequent years. Substantially all of these machines were purchased in or around the year 1912 and the petitioner sold several of them in 1920 and years subsequent thereto at original cost. The Corliss engine was covered over and has not been used or sold since November, 1919.

## OPINION.

LANSDON: At the hearing of this proceeding, counsel for the respondent admitted that the petitioner's opening inventory for 1920 had been improperly reduced by the amount of $9,355.21. As this point is conceded by the respondent, it requires no further consideration.

The evidence adduced in support of the petitioner's claim for a deduction from gross income in 1920 in the amount of $8,435.14, is indefinite and inadequate. The manufacture of headings was discontinued in November, 1919. Some of the machinery was sold during the taxable year and later years for amounts equal to its original cost to the petitioner. The Corliss engine was protected from the weather and remained in the possession of the petitioner. No evidence was introduced as to the depreciated or unrecovered cost on December 31, 1920, of the dry kiln, shed, trestle track, Corliss engine, or any other assets forming the basis of the claimed deduction. The schedule of costs of additions and improvements set forth in the findings of fact obviously applies to the entire plant, including the stave mill as well as the heading mill. From the record, we are unable to ascertain how the petitioner arrived at its

claimed deduction for so-called obsolescence in the amount of $8,435.14. We are of the opinion that the petitioner has not established his claim to a deduction from gross income in 1920 because of the dismantling of its heading mill and equipment. See *Marigold Garden Co.*, 6 B. T. A. 368.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by STERNHAGEN, GREEN, and ARUNDELL.